Howry, J.,
delivered the opinion of the court:
This is an action for the recovery of $2,800 as damages growing out of a claim for delay in unloading coal contracted by plaintiff to be carried for defendants from Manila to Zamboanga. Compensation is asked for the demurrage claimed under and by virtue of contract but accompanied with the statement that if the bill of lading did not truly and correctfy state the contract, or furnish complete evidence of the contract made between plaintiff and the United States, such bill of lading should be re-formed so that it should correctfy and truly represent the real agreement between the parties.
The findings sufficiently show the established ultimate facts to determine the matter of liability.
In Dayton v. Park, 142 N. Y., 393, Peckham, J., said for the court:.
“ Demurrage, technically so called, is founded upon some contract entered into between the consignor or freighter and the shipowner, which, under certain circumstances, is held to be assumed by the consignee. A delay beyond the time designated in the contract gives a cause of action in favor of the shipowner. Although it is said to be a claim in the nature of freight, yet it is perfectly distinct and separate therefrom.”
In the Federal courts of this country every improper de- ■ tention of a vessel whether occasioned by a collision or as the result of a breach of contract, express or implied, is considered as demurrage for which damages may be recovered whether they be liquidated or unliquidated damages. 5 Am. and Eng. Encyc. (1888), p. 542, and cases there cited.
In the present case there was nothing in the bill of lading fixing a certain number of days for unloading or stating the amount that should be paid for each day of delay beyond the ordinary day allowance for delay, but there was incorporated in the bill of lading, under the circumstances set forth in the findings, a statement excluding demurrage.
*332 But these words were accompanied by' and with an agreement on the part of the quartermaster issuing the bill of lading binding as far as the said quartermaster could make such an agreement for the United States that the coal should be promptly unloaded upon arrival of the vessel at the point of destination. This arrangement took form in a contemporaneous telegraphic request to the quartermaster at Zam-boanga forwarded by the quartermaster at Manila to the effect that plaintiff’s vessel would leave that night with the coal for Zamboanga, and that, as the rate was low “ and no demurrage, please be ready to unload promptly.”
The court is of opinion that the bill of lading and the telegram together constitute the implied agreement of the parties that reasonable diligence would be exerted for the discharge of the cargo. The vessel was not unloaded promptly, and there was unnecessary and unreasonable delay, .which might have been avoided, for a period of five days.
Independent of the understanding and expectations of the parties growing out of the character of the bill of lading and the concurrent request by wire (for the coal to be unloaded promptly) as an agreement, the obligation was implied on the tender of the bill of lading by the quarter.master to plaintiff’s agent that the Government would not take its own time needlessly to delay a discharge of the cargo. Any such interpretation as would put a carrier to an indefinite period of delay in having his cargo discharged would be unreasonably harsh and unjust.
A common carrier can not lawfully stipulate for exemption from responsibility for the negligence of himself or his servants when such exemption is not just and reasonable. Railroad Co. v. Lockwood, 17 Wall., 357. Equally true does it seem that a person contracting with a common carrier can not lawfully stipulate for exemption from responsibility for the consequences of the shipper’s own neglect or that of his servants by writing into a bill of lading that there should be no demurrage.
Strictly and technically the case before the court is not for demurrage as that term is used in maritime law, but a claim for damages in the nature of demurrage. In such case we can see no reason why the Government should not *333 respond in damages for the negligence disclosed by the findings any more than if the consignee appear to be a private shipper of coal.
There is fairly made out by the findings a just claim against the defendants for damages in the nature of demur-rage for five days at $200 per day.
Judgment will accordingly be entered for plaintiff for the sum of $1,000 against the United States.